Michael E. Haglund, OSB No. 772030
e-mail: mhaglund@hk-law.com
Julie A. Weis, OSB No. 974320
e-mail: weis@hk-law.com
Christopher T. Griffith, OSB No. 154664
e-mail: cgriffith@hk-law.com
Haglund Kelley LLP
2177 SW Broadway
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Proposed Defendant-Intervenor
Murphy Company

THE HONORABLE MARK D. CLARKE

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# MEDFORD DIVISION

| | |
|---|---|
| **KLAMATH SISKIYOU WILDLANDS CENTER, CASCADIA WILDLANDS, OREGON WILD, and SODA MOUNTAIN WILDERNESS COUNCIL,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES BUREAU OF LAND MANAGEMENT,**<br><br>Defendant,<br><br>and<br><br>**MURPHY COMPANY,**<br><br>Proposed Defendant-Intervenor. | Case No. 1:21-cv-01647-CL<br><br>**MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT OF INTERVENTION** |

## LR 7-1(a) Certification

Pursuant to Local Rule 7-1(a)(1)(A), counsel for proposed defendant-intervenor Murphy

Company conferred in good faith with counsel for plaintiffs and federal defendant regarding the

basis for this motion. Plaintiffs oppose the motion. Federal defendant the U.S. Bureau of Land Management (BLM) does not oppose the motion.

## MOTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure (FRCP), Murphy Company moves to intervene as a defendant in plaintiffs' latest lawsuit seeking to halt timber production from lands designated for that very purpose on BLM's Medford District in southern Oregon. More particularly, Murphy Company seeks to intervene in plaintiffs' lawsuit challenging BLM's Griffin Half Moon Vegetation Management Project (the Project) and its Griffin Half Moon Timber Sale, which Murphy Company purchased in 2018. Given their opposition to this motion, plaintiffs apparently desire not only to curtail Murphy Company's access to lawfully-purchased BLM timber, but also to prevent Murphy Company from sharing its views with the Court regarding plaintiffs' efforts to shut down BLM timber harvest in southern Oregon.

BLM authorized the Project and its implementing timber sale pursuant to a Finding of No Significant Impact and a Decision Record dated August 15, 2018, as supported by a thorough Revised Environmental Assessment (EA) that also issued in August 2018. Implementing the Griffin Half Moon Timber Sale is important to Murphy Company because it will provide white fir timber volume needed by Murphy Company's nearby White City veneer plant, which in turn will supply white fir veneer to Murphy Company's Rogue River and Eugene plants. Plaintiffs waited 16 months to bring their legal challenge, which appears to be part of a concerted effort to halt timber harvest on BLM's Harvest Land Base and O&C Act acreage in southern Oregon.[1] The Harvest Land Base is designated for continual timber production, and Congress mandated

---

[1] The O&C Sustained Yield Act is the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act of 1937, 43 U.S.C. § 2601 et seq.

Page 2 - **MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT OF INTERVENTION**

that O&C Act timberlands be managed for the dominant use of permanent forest production under the principles of sustained-yield timber management.  *See, e.g.*, *Pacific Rivers v. U.S. Bureau of Land Management*, Case No. 6:16-cv-01598-JR (D. Or. Oct. 12, 2018) ("[C]ourts have repeatedly held the O&C Act is a 'primary' or 'dominant' use statute for sustained-yield timber production.").

The Court should grant intervention of right under FRCP 24(a) because Murphy Company satisfies all four factors for intervention.  <u>First</u>, this motion is timely because it is being filed at an early stage of the case.  <u>Second</u>, Murphy Company has a significant interest in defending the Project given that it purchased the Project's Griffin Half Moon Timber Sale.  <u>Third</u>, plaintiffs' lawsuit threatens Murphy Company's interests – absent participation in the case, proposed intervenor would have no opportunity to defend against plaintiffs' efforts to impede or destroy Murphy Company's contract rights and its access to BLM timber needed to supply its Oregon wood products manufacturing facilities.  <u>Fourth</u>, the existing parties, including federal defendant, do not adequately represent the interests of Murphy Company because they do not share Murphy Company's private interests in this case.

On similar facts, the Court recently allowed Murphy Company to intervene as of right in a BLM Medford District timber sale/vegetation management project lawsuit brought by the same plaintiffs.  *See generally Klamath Siskiyou Wildland Ctr. v. BLM*, Case No. 1:19-cv-01810-CL, 2019 WL 6749411 (D. Or. Dec. 11, 2019).  The Court reached the right conclusion in that case and likewise should grant intervention as of right here.  The Court also could grant permissive intervention under FRCP 24(b) because Murphy Company's timely defenses share common questions of law and fact with the main action, which is all that is required for permissive intervention.

Page 3 - **MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT OF INTERVENTION**

This motion is supported by the following memorandum, the declarations of John Murphy and Julie Weis (attaching exhibits), and a proposed answer.

## MEMORANDUM

I.  **INTRODUCTION AND FACTUAL BACKGROUND.**

The Federal Rules of Civil Procedure allow an entity to intervene in pending litigation to protect its interests either as of right under FRCP 24(a) or permissively under FRCP 24(b).[2] Murphy Company moves to intervene in this action on the side of BLM.  Murphy Company does so because it seeks to defend against plaintiffs' challenge to the Project and its Griffin Half Moon Timber Sale, which Murphy Company purchased in 2018.

Plaintiffs seek to shut down commercial timber production on the BLM Medford District's timberlands even though the lands are Harvest Land Base and O&C Act timberlands designated under the governing Southwestern Oregon Resource Management Plan (RMP) to be the source of continual timber production going forward.  In essence, plaintiffs seek to further hinder the ability of companies like Murphy Company to harvest BLM timber on lands designated for that very purpose.  Plaintiffs seek to do so even though recent federal actions already have constrained commercial timber harvest access on timberlands managed by BLM.

In 2016, the Obama Administration adopted the RMP, dramatically shrinking the available land base for timber harvest.  Late last year, the D.C. District Court held that the RMP ran afoul of the O&C Act for that very reason, namely "excluding portions of O&C timberland

---

[2]  In 2011, the Ninth Circuit abandoned its prior court-engrafted constraints on intervention and acknowledged that a motion for intervention should be evaluated based solely on the Rule 24 intervention factors discussed below.  *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc).

from sustained yield timber harvest" despite the clear mandate of the O&C Act. *AFRC v. Hammond*, Case Nos. 16-1599, 16-1602 (RJL), 2019 WL 6311896, at *4 (D.D.C. Nov. 22, 2019). The availability of BLM timberlands for commercial timber harvest was further diminished through the Obama Administration's 2017 expansion of the Cascade-Siskiyou National Monument, which "added approximately 47,660 more acres of O&C land to the" Monument where commercial timber harvest is prohibited. *Id.* at *3. Plaintiffs, however, want more BLM placed off limits to timber production – for example, they complain that the Griffin Half Moon Timber Sale is "directly adjacent to the Cascade-Siskiyou National Monument," Compl. ¶ 38, presumably as a prelude to advocating (without merit) for a no-harvest buffer around the Monument. Plaintiffs thus seek to inflict further harm on wood products companies like Murphy Company who rightfully desire to harvest timber on BLM timberlands designated for sustained-yield timber harvest.

The Griffin Half Moon Timber Sale is located almost entirely on Harvest Land Base acres and completely on O&C Act timberlands. Declaration of John Murphy (Murphy Decl.) ¶ 6 (explaining that these are lands dedicated to sustained-yield timber harvest). The trees that Murphy Company will harvest are mostly (about 62%) white fir that "moved into the area due to historical fire suppression." *Id.* ¶ 8. The stands selected for harvest "are overstocked and are experiencing declining vigor and growth rates due to high levels of density-related competition that has primarily occurred from lack of disturbance (i.e., fire)." Declaration of Julie Weis (Weis Decl.), Ex. A at 2 (Project EA at 2). Project implementation will "move the forested stands on BLM lands in the Project Area towards desired future conditions . . . ." *Id.*, Ex. A at 3 (Project EA at 5).

Contrary to plaintiffs' characterization of the Project, Compl. ¶ 41, the Project "does not propose clearcutting . . . ." *Id.*, Ex. A at 7 (Project EA at B-1). BLM originally developed a proposed action (Alternative 2) that would have treated most stands via regeneration harvest, leaving 40-60 square feet of tree basal area per acre and "10-20 percent canopy cover retention." *Id.*, Ex. A at 4 (Project EA at 16). That is not clearcutting. Ultimately, after considering comments on the Project, BLM authorized *less* timber harvest through a mix of regeneration harvest (two units), high retention regeneration harvest (seven units), white fir regeneration harvest (two units) and commercial thinning (three units). *Id.*, Ex. B at 2 (Decision Record at 7). High retention regeneration harvest leaves basal areas of 60-100 square feet per acre with an associated canopy cover retention of 30-40 percent. *Id.*, Ex. A at 5 (EA at 29). White fir regeneration harvest retains basal areas of 60-80 square feet per acre with a retained canopy cover of 30-40 percent. *Id.*, Ex. B at 6 (EA at 33). And commercial thinning results in retained basal areas of 100-140 square feet per acre with a retained canopy cover of 35-50 percent. Despite BLM's decision to authorize less timber harvest than originally proposed, plaintiffs filed this lawsuit, waiting more than a year after Murphy Company purchased the Griffin Half Moon Timber Sale to do so.

Again, Murphy Company desires to defend against plaintiffs' aggressive effort to halt timber production on southern Oregon BLM timberlands designated for the very purpose of commercial timber production. Murphy Company's motion to participate as of right under FRCP 24(a) or, alternatively, as a permissive intervenor under FRCP 24(b), is warranted and should be granted in the interests of justice.

II.   **LEGAL STANDARDS.**

The legal requirements for intervention under FRCP 24 are set forth below. In

evaluating these requirements in the context of the pending motion, the Court should accept as true all nonconclusory allegations submitted in support of the motion to intervene. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) ("Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . as true absent sham, frivolity or other objections."). *See also Wilderness Soc'y*, 630 F.3d at 1176 (acknowledging that a motion for intervention should be evaluated solely on the requirements found in the text of Rule 24). Murphy Company satisfies the requirements for intervention.

### A.    Intervention as of Right.

The Ninth Circuit applies a four-part test in evaluating a motion for intervention as of right pursuant to FRCP 24(a):

> (1) the application for intervention must be timely;
>
> (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and
>
> (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Berg*, 268 F.3d at 817. The test is applied "liberally in favor of potential intervenors," and the Court's analysis "is guided primarily by practical considerations, not technical distinctions." *Id.* at 818 (internal quotation marks omitted). *See also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (emphasizing that "the requirements [for intervention] are broadly interpreted in favor of intervention").

### B.    Permissive Intervention.

A district court also has broad discretion to grant permissive intervention pursuant to

FRCP 24(b).  *See generally Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108-09, 1110-11 (9th Cir. 2002), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (abrogated by the en banc panel to the extent it relied on the now-abandoned federal defendant rule).  As explained by *Kootenai Tribe*, if a motion for intervention is timely, a court may allow intervention under FRCP 24(b) "'when an applicant's claim or defense and the main action have a question of law or fact in common.'"  *Id.* at 1111 (quoting the Rule).  Thus, unlike intervention as of right, permissive intervention has no protectable interest or adequacy of representation requirements and "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation."  *Id.* at 1108 (internal quotation marks omitted).

### III. ARGUMENT.

#### A. Murphy Company Should Be Allowed to Intervene as of Right.

Murphy Company satisfies the criteria for intervention as of right under FRCP 24(a).

#### 1. The motion is timely.

To determine whether a motion to intervene is timely, district courts in the Ninth Circuit typically weigh three factors: (1) the stage of the proceeding; (2) any prejudice to the other parties; and (3) the reason for and length of any delay.  *County of Orange v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986).  The key consideration is whether intervention will prejudice the existing parties.  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016).

Murphy Company's motion is timely.  Plaintiffs' lawsuit was filed on December 20, 2019, about a month before the filing of Murphy Company's motion.  Federal defendant has not yet answered the complaint nor made an appearance.  Because the intervention of Murphy Company at this early stage of the case will not prejudice the parties, timeliness is established.

Page 8 - MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT OF INTERVENTION

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

**2.    Murphy Company has a protectable interest at stake that relates to the subject matter of this lawsuit.**

Under Ninth Circuit law, it generally is "enough that the [proposed intervenor's] interest is protectable under *some law*, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) (emphasis added), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173.   The en banc *Wilderness Soc'y* decision also confirmed that an asserted interest need only relate to the "'property or transaction that is the subject of the action[,]'" such that the focus is on the property or transaction at issue, not on plaintiffs' legal claims.   630 F.3d at 1178 (quoting FRCP 24(a)).

Murphy Company has a significant interest at stake in this litigation.   If plaintiffs were to prevail in their continuing effort to cut off the timber supply from the BLM Medford District's Harvest Land Base, Murphy Company would lose the ability to harvest the timber in its Griffin Half Moon Timber Sale.   The lost timber supply, which is predominantly white fir needed for Murphy Company's White City veneer plant, Murphy Decl. ¶ 9, would threaten Murphy Company's operations, the livelihoods of its hundreds of employees, and Murphy Company's ability to supply its customers with needed wood products.

Murphy Company is a family-owned wood products company founded more than a century ago.  *Id.* ¶ 1.   Over the years, the company has evolved from a timber merchandizer to a manufacturer of softwood plywood, engineered wood, hardwood plywood, and, ultimately, a veneer specialist.   *See* http://murphyplywood.com/about/murphys-story.   Murphy Company currently operates five wood products facilities in Oregon that collectively employ nearly 900 people.  *Id.* ¶ 2.   The company, which depends heavily on timber purchases from public lands

Page 9 - MOTION TO INTERVENE AND
MEMORANDUM IN SUPPORT OF INTERVENTION

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
2177 SW BROADWAY
PORTLAND, OR 97201

like those managed by BLM for timber harvest, *id.* ¶ 4, is run by third and fourth generation Murphy family members who hope to continue meeting the ever-evolving needs of their customers for many years to come.

Murphy Company's White City veneer plant is located close to the Project area. Given the Griffin Half Moon Timber Sale's location and species mix, Murphy Company purchased the sale, which it hopes to harvest this coming summer (and had hoped to harvest earlier). *Id.* ¶ 8. Harvesting the sale will supply Murphy Company's White City facility with about 5.5 million board feet of white fir for the production of high grade veneer. *Id.* The high grade veneer from the White City plant is intended to supply Murphy Company's softwood plywood manufacturing operations in Rogue River and hardwood plywood manufacturing operations in Eugene, keeping almost 600 Murphy Company employees working in the process. *Id.* Substitute supply sources of white fir are uncertain, particularly given the efforts of groups like plaintiffs to curtail the supply of public timber through serial litigation efforts. This lawsuit is an example of plaintiffs' concerted agenda to curtail Murphy Company's access to BLM timber, as is plaintiffs' lawsuit challenging BLM's North Project, in which the Court recently granted Murphy Company's request to intervene. *Id.* ¶¶ 4, 7. *See also Klamath Siskiyou Wildland Ctr.*, 2019 WL 6749411.

Murphy Company also has a concrete interest in the property that is the subject of this lawsuit given plaintiffs' complaint that the Project authorizes timber harvest in proximity to the Cascade-Siskiyou National Monument. The Monument's expansion, effected by Antiquities Act Proclamation 9564, 82 Fed. Reg. 6,145 (Jan. 12, 2017), placed off limits to timber harvest 47,660 acres of O&C Act lands previously mandated by Congress to be managed for the dominant use of permanent forest production under the principles of sustained-yield timber management. *Hammond*, *supra*, 2019 WL 6311896, at *3. Murphy Company currently is

Page 10 - **MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT OF INTERVENTION**

litigating the legality of the Monument's expansion, with three of the four plaintiffs in this lawsuit (Klamath-Siskiyou Wildlands Center, Oregon Wild, and Soda Mountain Wilderness Council) opposing Murphy Company's lawsuit.  *See generally* Ninth Circuit Case No. 19-35921.[3]  Thus from Murphy Company's perspective, plaintiffs seek to use whatever means possible to curtail the available BLM timber supply, whether by advocating for the inclusion of Harvest Land Base and/or O&C Act acreage in the Monument or, as here, by complaining that timber production authorized on Harvest Land Base/O&C Act acres *outside* the expanded Monument is too close to the Monument for plaintiffs' comfort.   Murphy Company desires to defend its protectable interest in a BLM timber supply via sales like Griffin Half Moon and to oppose any effort to create a no-harvest buffer around the expanded Monument.

For Murphy Company to continue operating its five Oregon plants and employing its total work force in Oregon of nearly 900 employees, it is vital that public timber sales in BLM's Harvest Land Base not be delayed or halted by seemingly never-ending litigation.    Plaintiffs' requested relief in this case would further impair Murphy Company's supply of raw material inputs needed to maintain operations.   These facts, particularly when viewed through the practical lens of the protectable interest inquiry, show that Murphy Company has demonstrated a protectable interest related to the "property or transaction that is the subject of the action" for purposes of intervention under FRCP 24(a).

### 3. **Murphy Company's interests will be impaired if not represented**.

As explained in *Berg*, "'[i]f an absentee would be substantially affected in a practical

---

[3] The United States is aligned with Klamath-Siskiyou Wildlands Center, Oregon Wild, and Soda Mountain Wilderness Council, not with Murphy Company, in Murphy Company's challenge to the illegality of the Monument expansion.   Meanwhile, in the D.C. District Court (Case Nos. 17-280 and 17-441), Proclamation 9564 has been declared ultra vires.

sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'"  268 F.3d at 822 (alteration in original) (quoting FRCP 24 advisory committee's notes).  The intervention rule itself shows that the benefit of the doubt goes to proposed intervenors, explaining that an applicant must be "so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest . . . ."  FRCP 24(a) (emphasis added).

Murphy Company has demonstrated a concrete interest in defending and implementing the Griffin Half Moon Timber Sale, an interest threatened by plaintiffs' lawsuit.  Whereas plaintiffs desire to thwart responsible management of Harvest Land Base and O&C Act acres in the Project area, Murphy Company as the purchaser of the Griffin Half Moon Timber Sale is ready to harvest timber from the BLM lands designated for commercial timber production.  Murphy Decl. ¶ 8.  Murphy Company plans to manufacture the timber into various wood products, including high grade veneer, which will be sold to meet customers' various needs.  *Id.*  Plaintiffs, in contrast, ask the Court to declare the Project's environmental documents illegal and to set aside BLM's Finding of No Significant Impact and Decision Record.  Compl. at 18.  Plaintiffs' prayer for relief, which threatens to reduce Murphy Company's supply of raw materials from the Project area, plainly affects Murphy Company's interests detrimentally.

### 4. **The existing parties do not represent Murphy Company's interests.**

This Court recently allowed Murphy Company to intervene in a similar BLM Medford District timber sale/vegetation management project lawsuit brought by the same plaintiffs.  *See generally Klamath Siskiyou Wildland Ctr.*, 2019 WL 6749411.  In granting intervention, the Court rightly recognized that BLM does not represent the interests of Murphy Company because

BLM's "interests differ in scope" from those of Murphy Company.  *Id.* at *3.  The Court's conclusion was correct and applies equally in this case.

The showing required to demonstrate inadequate representation "is minimal: it is sufficient to show that representation *may* be inadequate."  *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995) (emphasis in original), *abrogated in part on other grounds by Wilderness Soc'y*, 630 F.3d 1173 (2011).  The U.S. Supreme Court long ago held likewise.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (stating that the inadequacy of representation factor requires only a "minimal" showing that the existing parties' representation "may" inadequately represent the movant's interests).

A proposed intervenor is adequately represented only if "(1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect."  *Southwest Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-54 (9th Cir. 1998).  The focus for evaluating this element is on "the subject of the action, not just the particular issues before the court."  *Berg*, 268 F.3d at 823 (internal quotation marks omitted).

Murphy Company's private interests in the subject of this action are not adequately represented in this case.  Proposed intervenor, which currently operates five wood products plants in Oregon (veneer, plywood, hardwood, and laminated veneer lumber plants), employs approximately 900 workers in its Oregon operations.  Murphy Decl. ¶ 2.  To keep its employees working, its facilities operating, and its customers supplied with products, Murphy Company relies heavily on the purchase of public timber.  *Id.* ¶ 4.  Murphy Company's private interests in this case include its contract interest in harvesting and processing the raw material,

mostly white fir, from the Griffin Half Moon Timber Sale, which is threatened by plaintiffs' lawsuit. *Id.* ¶¶ 8-9. More generally, because of its private reliance on public timber from BLM lands like those in the Project area, Murphy Company seeks to intervene as a defendant to protect its interest in timber sale offerings like this from the BLM's Medford District. *Id.* ¶ 4.

The plaintiffs do not share Murphy Company's interests – to the contrary, their prayer for relief seeks to halt any and all implementation of the Griffin Half Moon Vegetation Management Project. Compl. at 18. Nor is Murphy Company adequately represented by BLM. Although proposed intervenor presumably shares an interest with federal defendant in defeating plaintiffs' claims, Murphy Company's interests are not identical to those of BLM. Rather BLM, like any federal agency, is responsible for a broad range of public interests not shared by Murphy Company. *Accord Klamath Siskiyou Wildland Ctr.,* 2019 WL 6749411, at *3 (acknowledging the non-overlapping interests of BLM and Murphy Company when granting intervention in plaintiffs' North Project lawsuit). In fact, in response to public comments representing a viewpoint not shared by Murphy Company, BLM already reduced the timber volume authorized for harvest under the Project. And more generally, the United States, a unified sovereign encompassing BLM, is directly adverse to Murphy Company (and aligned with plaintiffs) in Murphy Company's challenge to the Monument expansion, which placed off limits to commercial timber harvest O&C Act timberlands designated by Congress for commercial timber production.

As recognized in *Berg*, a federal agency "cannot be expected" to protect private interests like those asserted by Murphy Company. 268 F.3d at 823. "Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F.3d at 1499 (citation and internal quotation

marks omitted).   Inadequate representation exists here where the broader interests of BLM do not align with Murphy Company's private interests in the subject of this action.

Even if we assume BLM will defend the North Project zealously, that does not mean BLM can, or will, adequately represent Murphy Company's narrower private interests.   The Ninth Circuit recognized this principle in *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983), a case in which environmental groups sought to intervene to support procedures establishing the Snake River Birds of Prey Conservation Area:

> We also agree that thus far in this litigation, the government, through the United States Attorney, has continued professionally and diligently to defend the actions of Secretary Andrus; there is no indication in this record of collusion or of any other conduct detrimental to the applicant's interest.   Nevertheless, such a showing is not required.   This court has consistently followed *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 . . . (1972) in holding that the requirement of inadequacy of representation is satisfied if the applicant shows that representation of its interests "may be" inadequate and that the burden of making this showing is minimal.

*Sagebrush*, 713 F.2d at 528.

Further, *Berg* observed that intervenors were not adequately represented by existing defendants where the intervenors "would likely offer important elements to the proceedings that the existing parties would likely neglect."   268 F.3d at 823 (explaining that "[t]he priorities of the defending government agencies are not simply to confirm the Applicants' interests . . . . On some issues, Applicants will have to express their own unique private perspectives").   Similarly, allowing Murphy Company to intervene will allow the company to share its perspective as a purchaser of BLM timber on the negative implications of plaintiffs' requested relief, and on the importance of the correct interpretation of the federal statute at issue, the National Environmental Policy Act.   The negative implications of plaintiffs' lawsuit are all too real to Murphy Company – plaintiffs' repeated challenges to BLM timber sales appears to have made the agency gun shy

about awarding contracts to timber sale purchasers like Murphy Company, despite Murphy Company's desire to implement the Griffin Half Moon Timber Sale as soon as possible.

For all of these reasons, Murphy Company has met the minimal showing required to demonstrate that the existing parties do not adequately represent its interests. Murphy Company thus has satisfied the final element for intervention under FRCP 24(a).

### B.  Alternatively, the Court Could Allow Permissive Intervention.

The Court also could exercise its discretion by allowing permissive intervention under FRCP 24(b), which again has no protectable interest or adequacy of representation requirements. District courts have broad discretion to grant a timely motion for permissive intervention so long as the movant "assert[s] a claim or defense in common with the main action." *Kootenai Tribe*, 313 F.3d at 1110. Timeliness was established above. And as was the case in *Kootenai Tribe*, Murphy Company asserts a "defense in common with the main action." *Id.*

In *Kootenai Tribe*, a case involving a NEPA challenge to the 2001 Roadless Area Conservation Rule, the Ninth Circuit discussed a district court's broad discretion to grant permissive intervention. Specifically, the court stated that "a 'significant protectable interest' is not required by Rule 24(b) for intervention, all that is necessary for permissive intervention is that intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Id.* at 1108 (quoting FRCP 24). The court then allowed non-governmental entities to intervene under FRCP 24(b) where they asserted "defenses of the Roadless Rule," *id.* at 1110, and an interest in the use and management of the public lands at issue. *Id.* at 1110-11.

Murphy Company similarly has an interest in defending the Project and its Griffin Half Moon Timber Sale, and in the use and management of the public lands at issue. In fact, compared with the intervenors in *Kootenai Tribe*, Murphy Company has an even more direct

interest in the current case given that Murphy Company seeks to defend a contract interest in timber on the public lands at issue.  *See* Murphy Decl. ¶¶ 5-6, 8-9 (discussing the Griffin Half Moon Timber Sale purchased by Murphy Company).   Proposed intervenor thus satisfies the FRCP 24(b) requirements, clearing the way for the Court to exercise its discretion in favor of intervention so that Murphy Company can "'contribute to the equitable resolution of this case.'" *Kootenai Tribe*, 313 F.3d at 1111 (quoting trial court).

## IV.     CONCLUSION.

The Griffin Half Moon Vegetation Management Project challenged by plaintiffs authorizes timber harvest via the Griffin Half Moon Timber Sale from Harvest Land Base and O&C Act timberlands in BLM's Medford District.   Murphy Company purchased the sale in 2018 and now, more than a year later, plaintiffs' lawsuit threatens Murphy Company's ability to implement the sale to supply its Oregon wood products facilities with needed timber supply. Plaintiffs seek not only to interfere with Murphy Company's contract rights but also to prevent Murphy Company from participating as a party in this case.   Plaintiffs should not prevail on either front.

The Harvest Land Base and O&C Act timberlands are designated for commercial timber production, and the Project is designed to contribute to the Medford District's timber harvest requirements.   Murphy Company thus desires to participate in this lawsuit to defend against plaintiffs' ongoing agenda to shut down the supply of timber from BLM lands in southern Oregon and to place Harvest Land Base and O&C Act acres off limits to timber harvest. Murphy Company satisfies the four-part test for intervention of right under FRCP 24(a) and also satisfies the requirements for permissive intervention under FRCP 24(b).   Murphy Company thus asks that it be allowed to participate in this case as a defendant-intervenor to contribute to

the full development of the issues before the Court, and to represent its private interests in the

Griffin Half Moon Vegetation Management Project and its Griffin Half Moon Timber Sale.

DATED this 10th day of December, 2021

        **HAGLUND KELLEY LLP**

  By:   /s/ Julie A. Weis
      Michael E. Haglund, OSB No. 772030
      Julie A. Weis, OSB No. 974320
      Christopher T. Griffith, OSB No. 154664
      Attorneys for Proposed Defendant-Intervenor

## CERTIFICATE OF COMPLIANCE

This brief (including the motion) complies with the applicable page and word-count limitation under LR 7-2(b) because it does not exceed 18 pages and contains 4,879 words excluding the parts of the brief exempted by LR 7-2(b)(1).

/s/ Julie A. Weis
Julie A. Weis

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2021, I served the foregoing **MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT OF INTERVENTION**, with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

/s/ Julie A. Weis
Julie A. Weis

**CERTIFICATE OF SERVICE**